GALLAGHER & ASCHER *et al.* *v.* UNITED STATES (No. 1491).[1]

1. RULE EJUSDEM GENERIS.

By paragraph 356, tariff act of 1913, a duty is imposed, amongst other articles, upon articles of a certain value composed of metal and designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, card cases, etc. If the assessed articles are similar to the named exemplars in respect to the manner in which they are worn or carried, then the resemblance meets the terms of the provision.

2. "PROREPEL" LEAD PENCILS.

These pencils resemble the designated articles in the paragraph in a common characteristic---that of being worn incidentally for comfort, convenience, or adornment; they are "like articles," and were properly assessed under that paragraph.

## United States Court of Customs Appeals, April 14, 1915.

APPEAL from Board of United States General Appraisers, G. A. 7625 (T. D. 34870). [Affirmed.]

*Comstock & Washburn (George J. Puckhafer* on the brief) for appellants.

*Bert Hanson,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel; *Leland N. Wood,* special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise involved in this case consists of so-called "prorepel" lead pencils, meaning that the lead is held by a small cylinder which slides in and out at the end of a larger cylinder or barrel. The pencils are composed entirely of base metal, except that some of them have imitation precious stones set in their top ends.

The collector held that the pencils in question "were designed to be worn on apparel or carried on or about or attached to the person, composed wholly or in chief value of metal, valued above 20 cents per dozen pieces." The collector therefore assessed the same with duty at 60 per cent ad valorem under paragraph 356, tariff act of 1913.

The importers protested against the assessment, claiming that the importations were dutiable at 20 per cent ad valorem as nonenumerated manufactures of metal under paragraph 167, same act, or at other alternative rates which need not now be considered. The importers also claimed a rebate of 5 per cent of the duties lawfully assessable upon the merchandise, by virtue of section 4 of paragraph J, subsection 7, of the act, but this claim was not sustained by any testimony in the case.

The protest was submitted upon evidence to the Board of General Appraisers and was overruled. The importers now appeal.

The following is a copy of the relevant parts of paragraphs 167 and 356, tariff act of 1913, thus called into question:

167. Articles or wares not specially provided for in this section; * * * if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc,

---

[1] Reported in T. D. 35343 (28 Treas. Dec., 687).

aluminum, or other metal, but not plated with gold or silver, and whether partly or wholly manufactured, 20 per centum ad valorem.

356. * * * and articles valued above 20 cents per dozen pieces designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, card cases, chains, cigar cases, cigar cutters, cigar holders, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, and like articles; all the foregoing and parts thereof, finished or partly finished, composed of metal, whether or not enameled, washed, covered, or plated, including rolled gold plate, and whether or not set with precious or semi-precious stones, pearls, cameos, coral, or amber, or with imitation precious stones or imitation pearls, 60 per centum ad valorem. * * *

The record in the case shows, without contradiction, that the articles in question are valued above 20 cents per dozen pieces and that they are composed wholly of metal, except that some of them are set with imitation precious stones. In these two particulars therefore the importations are within the descriptions of paragraph 356, *supra*. The question thereupon arises whether the pencils in question respond also to the statutory description of "articles * * * designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, card cases, chains, cigar cases, cigar cutters, cigar holders, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, and like articles." This question expressed the real issue in the case, the Government contending that the present articles are designed to be worn or carried on or about the person in like manner with the several articles above described or referred to, and that this characteristic brings them within the disputed classification; the importers upon the other hand denying both of these assertions. The present question therefore becomes largely one of fact to be decided upon the testimony contained in the record, the burden being cast upon the importers by reason of the collector's assessment of the articles.

The testimony shows that the pencils in question are novelties, which are mostly used as advertising materials; as, for example, a commercial house may have its name and business printed or cast in the metal barrel of the pencil and distribute the same gratuitously among its customers. The pencils are smaller in size than ordinary wooden lead pencils, and can be carried conveniently in a purse or in a man's vest pocket. A special feature of the pencil is its so-called refill character—that is to say, when one piece of writing lead is worn out another piece may be fastened in the slide and the use of the pencil be continued indefinitely. Some of the pencil barrels contain also a chamber for holding a supply of extra leads designed for this use. The use of the so-called "prorepel" slide is of course an important

characteristic of the article.   When the slide is pushed into the barrel the pencil is shortened by that much, and the lead is thereby brought within the barrel and is covered and protected by it.   By reason of this fact the pencil may be carried in a purse or pocket without soiling or puncturing the same.   The lead which is used in such pencils is softer than that used in ordinary wooden pencils, and comes in pieces which are already sharpened.   The statement was directly made by two witnesses at the trial before the board that the pencils thus described are designed to be carried upon the person in a purse or pocket, and are not designed for desk or office use.   Upon this record we think that the assessment of the article under paragraph 356, *supra,* as made by the collector, should be sustained.

The importers, in opposition to this view, contend that the rule of *ejusdem generis* should be applied to the construction and application of the provision in question, and that the present pencils should not be assessed thereunder unless they are found to be like some of the articles which are enumerated in that provision, such as buckles, card cases, chains, cigar cases, etc.   The importers contend that the entire list of articles thus enumerated falls into four distinct classes, which are (1) articles of personal adornment akin to jewelry but with utilitarian value, (2) smokers' articles, (3) various articles for feminine use, such as chatelaine ornaments, and (4) ornamental articles worn directly upon the person, such as combs, etc.   The importers maintain that the present articles do not fairly come within any one of these four classes, and therefore should not be classified and assessed as "like articles" with those enumerated in the provision in question.

We think, however, that the rule of *ejusdem generis* does not apply to the provision now under review in the manner claimed by the importers.   By that provision a duty is imposed upon articles of a certain value composed of metal, which are designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, card cases, etc.   The controlling question in this provision, outside of the question of value and material, seems to be whether the articles in question are designed to be worn on apparel or carried on or about or attached to the person in the same manner as are the enumerated articles and like articles when in their customary use. If the assessed articles do not resemble the enumerated ones in that particular, then they would not fall within the present provision, whatever might be their resemblance to the exemplar articles or some of them in any other particular.   On the other hand, if the assessed articles are similar to the prescribed exemplars in respect to the manner in which they are worn or customarily carried upon the person, then the resemblance is sufficient to satisfy the terms of the provision.   The rule of *ejusdem generis* is thus limited by the paragraph to the single controlling resemblance just defined.

It may be observed that the articles which are enumerated in the disputed provision are numerous and in some respects diverse. Some of them are wholly ornamental in character, for example, "vanity cases" and "millinery ornaments"; some are wholly utilitarian, for example, "cigar cutters" and "match boxes"; some may be both ornamental and useful, for example, "chains" and "cuff buttons." In one particular, however, they are all alike, and that is that in their customary use they are all carried upon the person of the user, not for warmth or protection like clothing, but rather as incidental articles of mere personal comfort, convenience, or adornment. This characteristic belongs also to the metal pencils now in question, and brings them within the provision for "like articles," which follows the list of enumerated articles in the paragraph.

Under the tariff act of 1909 pocket pencils in chief value of metal were held by the board to be dutiable as unenumerated manufactures of metal under paragraph 199 of that act, thereby reversing the collector's assessment of the same as articles of personal adornment under paragraph 449, same act. This latter paragraph was the jewelry paragraph of the former revision and corresponded to paragraph 356 of the act of 1913, the one now in question. Abstract 25670 (T. D. 31624); Abstract 26320 (T. D. 31813); Abstract 26552 (T. D. 31866); Abstract 26624 (T. D. 31883); Abstract 28686 (T. D. 32560). A comparison of the two corresponding paragraphs will disclose the fact that the provisions of the latter are more general and comprehensive in character than the former, and while it is true that the present pencils are not specifically enumerated in the paragraph, they nevertheless fall within the descriptive terms contained therein, and therefore should be classified under the provision for unenumerated "like articles" which follows the list of enumerated ones in the paragraph.

The decision of the board sustaining the collector's assessment is therefore *affirmed*.