KRESGE CO. ET AL. *v.* UNITED STATES (No. 2165).[1]

FOLDING POCKET SCISSORS.

The fact that scissors are made to fold, so that they may be more handily carried in the pocket, does not take them without the eo nomine classification "scissors," in paragraph 128, tariff act of 1913, and carry them within the provision of paragraph 356 for "articles * * * designed to be * * * carried on or about * * * the person * * *."

---

[1] T. D. 39318.

United States Court of Customs Appeals, November 13, 1922.

APPEAL from Board-of United States General Appraisers, G. A. 8507 (T. D. 39015).

[Reversed.]

*Barnes, Chilvers & Halstead* (*Frank M. Halstead* of counsel) for appellants.

*William W. Hoppin,* Assistant Attorney General (*Samuel M. Richardson* and *Bernard Hahn,* special attorneys, of counsel), for the United States.

[Oral argument October 3, 1922, by Mr. Halstead and Mr. Richardson.]

Before SMITH, BARBER, and MARTIN, Associate Judges.

BARBER, Judge, delivered the opinion of the court:

The question in this case is whether certain folding metal scissors valued above 20 cents per dozen pieces are dutiable as assessed by the collector under paragraph 356 of the act of 1913 at 60 per cent ad valorem or under the provision for scissors contained in paragraph 128 of the same act at 30 per cent ad valorem.

The scissors are so made that the cutting edges and points of the blades may be folded and firmly held by and within the jointed handles in such manner that contact thereof with anything else is prevented. When opened, the scissors are similar to ordinary ones of medium size, and may be used in the same manner and for the same purposes. When folded, it is obvious they may be conveniently carried in the pocket or elsewhere with less liability of injury to other things than ordinary scissors, unless the latter are inclosed in some protecting covering. It is this folding characteristic that distinguishes them from ordinary scissors.

There are three invoices and two importations. On two of the invoices they are described as folding scissors and on the other as scissors.

The collector in forwarding the papers to the Board of General Appraisers referred to those covered by one protest as scissors. Those covered by the other he did not definitely describe, but called attention to the special report of the appraiser, who described them as small metal folding scissors designed to be carried in the vest pocket. Those specifically called scissors by the collector were by the appraiser described as small folding scissors.

The only witness who testified on behalf of importers as to their name and use said they were folding scissors; that such was their common name; that they might be called folding pocket scissors; that he had seen them advertised as folding scissors; that some people bought them for children; that they were used by people to carry in the pocket; that some women carried them in their hand bag; that if a man used them he carried them in his pocket; and that he believed they were designed for that use.

The only witness who testified on behalf of the Government said they were known as folding scissors.

The Board of General Appraisers refers to them as folding pocket scissors, which characterization is adopted by the Government, while the importers speak of them as folding scissors.

We have referred to this in detail because the board was of opinion that, considering them to be folding pocket scissors, they were not within the eo nomine description of scissors in paragraph 128, hereinafter quoted.

There is, however, no question of commercial designation in the case, and we think the term "folding scissors" aptly describes them.

Generally as sold in the trade. there is a cheap, flimsy paper or leatherette sheath or case which incloses one end of the folded scissors, but does not cover the ends of the blades, which are inclosed and protected by the folded thumb and finger circular handle ends, as already indicated. These cases inclose about one-half the length of the scissors when folded.

The scissors are sometimes imported with and sometimes without the covers, and judging from the condition of the exhibits before us the covers, if used, soon wear out.

No question arises here as to the dutiable status of the covers as separated from the scissors.·

The essential part of paragraph 128 is as follows:

Scissors and shears, and blades for the same, finished or unfinished, 30 per centum ad valorem:

The relevant part of paragraph 356 provides for—

articles valued above 20 cents per dozen pieces designed to be worn on apparel, or carried on or about or attached to the person, such as and including buckles, card-cases, chains, cigar cases, cigar cutters, cigar holders, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, and all like articles; all the foregoing and parts thereof, finished or partly finished, composed of metal, whether or not enameled, washed, covered, or plated, including rolled gold plate, and whether or not set with precious or semiprecious stones, pearls, cameos, coral, or amber, or with imitation precious stones, or imitation pearls, 60 per centum ad valorem.

The question is whether the scissors are more closely described in paragraph 356 than in paragraph 128.

The Board of General Appraisers, after determining that the scissors were not eo nomine provided for in paragraph 128, held in substance that even if they were so provided for therein, and were not in effect eo nomine covered by paragraph 356, nevertheless Congress had manifested its intent that such articles as these should be classified under the latter paragraph, evidently because of the fact that these scissors were so different from ordinary ones which are not designed to be carried on or about the person.

We are in accord with the rule that the intent of Congress, when ascertained, should prevail, regardless of the eo nomine description in paragraph 128, but we do not agree with the conclusion of the board

that a congressional intent to exclude these scissors from paragraph 128 is established.

Some reliance in this aspect of the case was placed by the board, and is by the Government, on the decision of this court in Bischoff *v.* United States (7 Ct. Cust. Appls. 138; T. D. 36458), in which cigar lighters were held classifiable under paragraph 356 rather than under paragraph 381 as smokers' articles.

In the opinion in that case we said that it was possible to say that the use of the intensified expression "all smokers' articles whatsoever not specially provided for," employed in paragraph 381, was designed to serve as an eo nomine description of each and every smokers' article, which, if granted, might require classification of the cigar lighters thereunder, but that question was not decided. The opinion states that the issue in the case was a close one, and that the most favorable view to the importers was that the cigar lighters were equally within both paragraphs, in which event the highest rate of duty provided for would be taken. It was pointed out, however, that the cigar lighters were like articles to the cigar cases, holders, cutters, etc., named in paragraph 356 as exemplars, and as the evidence was undisputed that they were carried by smokers to light cigars it was concluded that they fell under paragraph 356, which does not contain the n. s. p. f. provision, rather than under paragraph 381, which does contain it.

It may be observed that paragraph 128 does not contain the n. s. p. f. provision, and as we think these folding scissors are eo nomine provided for in paragraph 128, it follows they should be classified thereunder.

It is true that the folding characteristic of these scissors may somewhat widen the opportunity for their general use in that they may be more readily carried in the pocket than the ordinary scissors, and so be more readily at hand when needed, although a protective sheath makes it entirely feasible to likewise carry on the person the ordinary scissors. Scissors, however, are a small hand tool appropriately designed and used for cutting purposes. These jointed scissors are likewise so designed and used, and therefore they are still scissors under paragraph 128, which contains an eo nomine provision therefor. They are not of the class of articles of which it may be said they are for mere personal comfort, convenience, or adornment (see Gallagher & Ascher *v.* United States, 6 Ct. Cust. Appls. 105; T. D. 35343, hereinafter more particularly referred to), but are only appropriate for the uses for which small scissors are designed. They are not ornamental. They are not like any of the articles specifically named in paragraph 356 as exemplars. Their use is purely utilitarian. The samples before us are cheap articles, and to assess them at the high rate of duty imposed in paragraph 356 seems to us contrary to congressional intent. They are more like the

class of articles such as pedometers, policemen's whistles, wristlets or straps for holding wrist watches in place, and the watches themselves, which we have held not classifiable under paragraph 356.

See United States v. Sussfield Lorsch & Co. (7 Ct. Cust. Appls. 126; T. D. 36454), Schoverling v. United States (7 Ct. Cust. Appls. 172; T. D. 36491), United States v. Wittnauer (8 Ct. Cust. Appls. 370; T. D. 37628), United States v. Strasburger & Co. (8 Ct. Cust. Appls. 376; T. D. 37630), United States v. European Watch & Clock Co. (11 Ct. Cust. Appls. 363; T. D. 39160).

We think the principle of the last-cited decision is well applicable here. Paragraph 161 there under consideration eo nomine applied to watch movements and watchcases, just as paragraph 128 applies to scissors and blades for the same. There it was held that the watch movements and cases, although designed, as were the wrist watches, to be carried on or about the person, and so in that particular within paragraph 356, were, nevertheless, still to be classified under paragraph 161, and so here these scissors are classifiable under the paragraph in which they are eo nomine referred to.

The Government cites the case of Gallagher v. United States (6 Ct. Cust. Appls. 105; T. D. 35343) in which we held that certain so-called "prorepel" lead pencils were within paragraph 356. That case may be distinguished from the one at bar, however, because the competing paragraph under which assessment was claimed by the importer was 167 of the present act, which does not eo nomine provide for pencils of any kind, but directs classification according to component material.

In its opinion the Board of General Appraisers pointed out, among other things, and the Government avers likewise here, that this court in United States v. Gluck (8 Ct. Cust. Appls. 11; T. D. 37160) passed upon scissors like the ones at bar, and held the same classifiable under paragraph 356, as between that and paragraph 360.

In the Gluck case we so held, but on examination thereof we note, as did the board, that the folding scissors there were contained in a leather case with other articles, or in a case alone; that it was conceded that these cases and their contents should be treated as entireties, and the opinion disposed of them on that theory. It is also to be noted that two members of the court specially concurred in the decision because of that concession, but at the same time expressed the view that many of the importations were not entireties, and not properly dutiable under either paragraph 356 or 360, but under other appropriate provisions of the act, according to the individual name or description of the separate units.

Paragraph 128 was not invoked in the Gluck case, and we do not regard that case as controlling here.

The judgment of the Board of General Appraisers is *reversed.*