ABERCROMBIE & FITCH CO. *v.* UNITED STATES (No. 4417)[1]

United States Court of Customs and Patent Appeals, July 6, 1943

*Lane & Wallace* (*William H. Fox* of counsel) for appellant.

*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks*, special attorney, of counsel), for the United States.

[1] C. A. D. 248.

[Oral argument April 6, 1943, by Mr. Fox and Mr. Rao]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON Associate Judges [2]

GARRETT, Presiding Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, overruling the protest of the importer whereby it seeks to recover certain duties assessed and collected by the Collector of Customs at the port of New York on merchandise (entered January 29, 1940) invoiced as "500 Pcs. Pocket Warmers."

A sample, representative of the merchandise in its condition as imported, was introduced in evidence as Collective Exhibit 1. It is described in the trial court's decision as follows:

This collective exhibit consists of a cardboard box on which are printed the words "HAND WARMER." The box contains a cotton velvet bag, the so-called hand warmer, printed instructions relating to the use and operation of the article, and a metal filling cup. The hand warmer, itself, is a nickel plated metal article, being concededly composed in chief value of copper and not plated with platinum, gold, or silver, or colored with gold lacquer. It is approximately 3¾ inches long, 2¾ inches wide, and ⅝ inch thick. It has rounded corners, and a perforated removable cap. In general shape and size it resembles an ordinary cigarette case. It is fitted with a burner that is removable to permit of the loading with fuel essential for the operation of the article. The body of the warmer is filled with loosely packed cotton which becomes saturated with the fuel. The metal filling cup is used to pour the fuel into the hand warmer.

The merchandise was classified by the collector under paragraph 1527 (c) (2) of the Tariff Act of 1930. Paragraph 1527 (c) (1) (2) reads as follows:

(c) Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, cardcases, chains, cigar cases, cigar cutters, cigar holders, cigar lighters, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, watch bracelets, and like articles; all the foregoing and parts thereof, finished or unfinished:

(1) Composed wholly or in chief value of gold or platinum, or of which the metal part is wholly or in chief value of gold or platinum, 80 per centum ad valorem;

(2) composed wholly or in chief value of metal other than gold or platinum (whether or not enameled, washed, covered, or plated, including rolled gold plate), or (if not composed in chief value of metal and if not dutiable under clause (1) of this subparagraph) set with and in chief value of precious or semiprecious stones, pearls, cameos, coral, amber, imitation precious or semiprecious stones, or imitation pearls, 1 cent each and in addition thereto three-fifths of 1 cent per dozen for each 1 cent the value exceeds 20 cents per dozen, and 50 per centum ad valorem.

It was stipulated by counsel for the respective parties that the collective exhibit is in chief value of copper and not plated with platinum, gold, silver, or colored with a gold lacquer, and it was

[2] Lenroot, Judge, took no part in the consideration or decision of this case.

established by the evidence of the United States examiner who passed the merchandise that the warmers had a value of $3.40 per dozen c. i. f. New York. The rates of duty assessed upon them, as articles to be worn on apparel or carried on or about or attached to the person, were equivalent to 110 per centum ad valorem.

The protest addressed to the collector embraced alternative claims, the particular ones finally relied upon being stated in the protest as follows:

1. The rate or rates of 110% under par. 1527 (c) (2), tariff act of 1930, or other duty charged by you, is not the legal duty chargeable upon said goods. 2. That said articles are not provided for in said paragraph 1527 (c) (2), and therefore are properly dutiable at 45% under par. 397, tariff act of 1930. 3. Claiming further in the alternative that if said merchandise is properly dutiable under said paragraph 1527 (c) (2), then it is properly dutiable under said paragraph at only 2/3c each and 2/5c per doz. for each 1c the value exceeds 20c per doz. plus 25% ad valorem by virtue of the trade agreement with France (T. D. 48316).

The particular language of paragraph 397, under which the importer primarily claims, reads:

PAR. 397. Articles * * * not specially provided for, * * * if composed wholly or in chief value of * * * copper, * * * but not plated with platinum, gold, or silver, or colored with gold lacquer * * * 45 per centum ad valorem.

The pertinent provisions of the trade agreement with France, promulgated by Presidential proclamation dated May 16, 1936 (T. D. 48316), involved in importer's alternative claim, read:

*Trade agreement with France*

T. D. 48316

| Tariff Act of 1930, paragraph | Description of articles | Rate of duty |
|---|---|---|
| 1527 (c) | Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, card-cases, chains, cigar cases, cigar cutters, cigar holders, cigar lighters, cigarette cases, cigarette holders, coin holders, collar, cuff and dress buttons, combs, match boxes, mesh bags, and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, watch bracelets, and like articles; all the foregoing and parts thereof, finished or unfinished: | |
| | (1) Composed wholly or in chief value of gold or platinum, or of which the metal part is wholly or in chief value of gold or platinum. | 60% ad val. |
| 1527 (c) | (2) Composed wholly or in chief value of metal other than gold or platinum (whether or not enameled, washed, covered, or plated, including rolled gold plate), or (if not composed in chief value of metal and if not dutiable under clause (1) of this subparagraph) set with and in chief value of precious or semiprecious stones, pearls, cameos, coral, amber, imitation precious or semiprecious stones, or imitation pearls, and valued above $5 per dozen pieces. | 2/3¢ each and 2/5¢ per doz. for each 1¢ the value exceeds 20¢ per doz. and 25% ad val. |

The modifications made by the trade agreement of the rates named in the statute are readily discernible from a comparison of the above-quoted statutory and trade agreement provisions.

No detailed review of the evidence in this case is here necessary, because there is no dispute as to any essential fact concerning the material of which the warmers are composed, nor any dispute as to their principal use. The evidence clearly shows that, so far as use is concerned, they were designed to be used and are principally used for keeping the hands warm, and that in such use they are either carried in the hand or in a pocket into which the hand may be thrust to contact them, or grasp them.

They were not designed to be "pocket" warmers in the sense of warming the pocket in the clothing worn by tne person using them, but obviously were designed so that when carried in a pocket they may be grasped by tne hand to warm the hand.

So, the questions before us are questions of law.

Before proceeding to their consideration, we quote the following from the decision of the trial court:

> To place the article in condition ready for use, the burner is removed and a specially prepared fluid is poured into the container. This fluid, which consists of benzene treated with ether with the addition of pine or cedar oil to give it a pleasant odor, is the fuel supplied by plaintiff for use in these warmers. To ignite the burner, the best result is obtained by the use of a gas flame. When the burner is ignited, a gas is created that gives off heat of approximately 180 degrees. If a quantity of fuel equal to the capacity of the metal filling cup is used, the warmer will burn for approximately fifteen hours. The use of a lesser quantity of fuel will furnish heat for a relatively fewer number of hours. If the user desires to extinguish the warmer before all of the fuel is consumed he merely removes the burner. While no heat is given off after the removal of the burner, the gas continues to evaporate until the supply of fuel is exhausted. There is no automatic feature connected with the warmer. In order to put it into operation after it has been extinguished, the burner must be ignited with the use of a proper gas flame.

The primary question of law is whether the warmers fall within the meaning of the language of paragraph 1527 (c) reading, "designed to be worn on apparel or carried on or about or attached to the person."

In the brief on behalf of appellant it is said:

> Appellant concedes that the design of the pocket warmers in question is such that they may be conveniently carried on or about the person, but contends, under the principle of cases hereinafter cited, that they are not "like articles" to those enumerated in paragraph 1527 (c), because in their customary use they are not carried upon the person of the user as incidental articles of mere personal comfort, convenience, or adornment, but rather to perform the necessary or essential function of providing the bearer with warmth or protection from the cold.

In the briefs on behalf of both parties the case of *Gallagher & Asher et al.* v. *United States*, 6 Ct. Cust. Appls. 105, T. D. 35343, 28 Treas. Dec. 687, is cited as the leading case interpreting the language under consideration. That case arose under the 1913 tariff act, paragraph 356 of which contained a provision substantially the same (except as to the duty rates) as that now under discussion.

The merchandise there involved consisted of so-called "pro-repel" lead pencils. They were minutely described in the decision and it is unnecessary here to say anything more of their physical characteristics than that they were of metal, etc., and were of a size and form which rendered them adaptable to be conveniently carried in ladies' purses or in men's vest pockets. They were classified by the collector (under paragraph 356 of the 1913 tariff act) as articles designed to be worn on apparel or carried on or about or attached to the person. The importers' claim was that they were classifiable under a paragraph (167) similar to paragraph 397 of the Tariff Act of 1930.

We there affirmed the judgment of the Board of General Appraisers (now the United States Customs Court) sustaining the collector's classification, and, in the course of our decision, construed the language involved so far as such construction was necessary with reference to the classification of the particular merchandise there involved.

The importers there invoked application of the rule of *ejusdem generis*, contending that the pencils involved were not "such as" or "like"—that is not *ejusdem generis* with—buckles, card cases, chains, cigar cases, or any of the several articles *eo nomine* designated in the paragraph, and that is the gravamen of importer's contention here.

In the course of our decision in that case we said:

We think * * * that the rule of *ejusdem generis* does not apply to the provision now under review in the manner claimed by the importers. By that provision a duty is imposed upon articles of a certain value composed of metal, which are designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, card cases, etc. The controlling question in this provision, outside of the question of value and material, seems to be whether the articles in question are designed to be worn on apparel or carried on or about or attached to the person in the same manner as are the enumerated articles and like articles when in their customary use. If the assessed articles do not resemble the enumerated ones in that particular, then they would not fall within the present provision, whatever might be their resemblance to the exemplar articles or some of them in any other particular. On the other hand, if the assessed articles are similar to the prescribed exemplars in respect to the manner in which they are worn or customarily carried upon the person, then the resemblance is sufficient to satisfy the terms of the provision. The rule of *ejusdem generis* is thus limited by the paragraph to the single controlling resemblance just defined.

It may be observed that the articles which are enumerated in the disputed provision are numerous and in some respects diverse. Some of them are wholly ornamental in character, for example, "vanity cases" and "millinery ornaments"; some are wholly utilitarian, for example, "cigar cutters" and "match boxes"; some may be both ornamental and useful, for example, "chains" and "cuff buttons." In one particular, however, they are all alike, and that is that in their customary use they are all carried upon the person of the user, not for warmth or protection like clothing, but rather as incidental articles of mere personal comfort, convenience, or adornment. This characteristic belongs also to the metal pencils now in question, and brings them within the provision for "like articles," which follows the list of enumerated articles in the paragraph.

In quoting the last foregoing paragraph, appellant italicizes the

words "not for warmth or protection," appearing therein, and, apparently, makes that phrase the basis of the following argument stated in its brief:

Under the above quoted judicial interpretation of the language used in the predecessor provision of paragraph 1527 (c) (2) here in question, articles which in their customary use are carried for the purpose of providing the bearer with the comfort of warmth or protection, clearly are not within the class of articles which in their customary use are carried for the purpose of providing the bearer with some mere *incidental* personal comfort, convenience, or adornment. Obviously the comfort derived from warmth is necessary to the proper well-being of a person, and an article carried to provide warmth is not providing a mere incidental comfort such as that provided by the use of any of the articles enumerated in paragraph 1527 (c), or like articles. Further, it is clear that a pocket warmer does not serve the user any incidental convenience, or adornment.

In other words under the decision of this court in the *Gallagher* case articles which in their customary use on or about the person provide the individual only with the comfort of warmth or protection are not providing him with the mere incidental comfort, convenience or adornment that is provided by the class of articles specified in said paragraph 1527 (c), and therefore such articles are not classifiable for duty under the provision for "like articles" in that paragraph.

In connection with the foregoing appellant refers to the fact that the Congress reenacted paragraph 356 of the 1913 act, first in paragraph 1428 of the Tariff Act of 1922, and as 1527 (c) of the 1930 act, and seeks to invoke the rule of legislative adoption, or ratification, of judicial interpretation.

Appellant has misinterpreted the phraseology of this court's decision above quoted, particularly the application of the phrase "not for warmth or protection." That phrase must be considered and interpreted in connection with the entire context of the sentence in which it appears. When so considered and interpreted, there is no justification for concluding that it was there intended to hold that an article which might furnish "warmth or protection," but which was "designed to be worn on apparel or carried on or about or attached to the person" should be eliminated from classification under the paragraph. None of the articles mentioned are worn "like clothing," of course, and none of them, even those of a wholly utilitarian character, function like clothing functions. The articles at bar (which we regard as novelties) do not supply warmth like clothing supplies warmth, but supply it in the manner for which they were designed. That they have utility may be conceded but this does not exclude them from the paragraph. Card cases, cigar cases, and various of the other articles *eo nomine* designated in the paragraph have utility. That the warmers here involved are used as incidental articles of personal comfort, just as are certain of the articles named in the paragraph is also true but that fact does not exclude them.

We think it must be said here as was said, in substance, in the decision respecting the pencils involved in the *Gallagher & Asher* case,

*supra,* that the warmers have characteristics which bring them within the provision for "like articles" following the list of articles enumerated in paragraph 1527 (c).

In its brief appellant cites cases in which pedometers, rosaries, policemen's whistles, and folding pocket scissors were held not to be articles designed to be worn on apparel, etc., within the meaning of the paragraph. Obviously, their characteristics differentiated them from the enumerated articles. That is not true of the articles before us.

Under the foregoing holding we need give no further consideration to appellant's primary claim for classification under paragraph 397, nor is it necessary to discuss the doctrine of legislative ratification.

The only remaining question to be considered is that growing out of appellant's alternative claim based on the French Trade Agreement, the pertinent portions of which have been quoted, *supra.*

It will be observed from a comparison of the text of the statute (paragraph 1527 (c) (1) (2) ) with the text of the trade agreement that the language (except as to rates) is the same in meaning down to, but not including, the last phrase of subsection, or clause, (2) of the agreement which reads "and valued above $5 per dozen pieces." That phrase does not appear in the statute, and in making the assessment here complained of the collector proceeded upon the theory that the phrase applies to all articles of the class contemplated by the paragraph and that the reduced rates named in the trade agreement apply only to such of those articles as are valued above $5 per dozen pieces. The articles here involved, having been valued at only $3.40 per dozen pieces, were, therefore, assessed at the rates fixed by the statute rather than at the rates named in the agreement.

Under appellant's theory the articles involved should have been assessed at the rates fixed in the trade agreement (equivalent to 65 per centum ad valorem) instead of at the rates named in the statute (equivalent to 110 per centum ad valorem).

Appellant contends that the phrase "and valued above $5 per dozen pieces" refers only to its immediate antecedents and does not relate back to the beginning of clause (or subsection) (2) of the trade agreement reading, "Composed wholly or in chief value of metal other than gold or platinum." The brief on behalf of appellant asserts:

The qualifying words "articles valued above 20 cents per dozen pieces" apply to every article dutiable under said paragraph 1527 (c) down to and including those dutiable under the first part of clause (2) reading: "composed wholly or in chief value of metal other than gold or platinum * * *." Then a separate class of articles is provided for under the provision in said clause (2) reading:

"or (if not composed in chief value of metal and if not dutiable under clause (1) of this subparagraph) set with and in chief value of precious or semiprecious stones, pearls, cameos, coral, amber, imitation precious or semiprecious stones, or imitation pearls, *and valued above $5 per dozen pieces.*"

The qualifying words "and valued above $5 per dozen pieces," clearly refer only to the class of articles provided for in the last part of said clause (2). The trade agreement negotiators have limited that class to articles *set with and in chief value* of precious or semiprecious stones, or imitation precious or semiprecious stones, or pearls, cameos, coral, amber, or imitation pearls, *and valued above $5 per dozen pieces*, and have expressly excepted from that class of articles those composed in *chief value of metal*, and those *dutiable under clause (1)* of paragraph 1527 (c).

We have considered the arguments advanced by counsel for appellant in support of the above assertion with much care, and we are unable to find any sound basis for the contentions made.

Paragraph 1527 (c) (1) (2) (one of the numerous paragraphs included in "SCHEDULE 15.—SUNDRIES" of the Tariff Act of 1930) is complete within itself, and must be construed as a whole, and the trade agreement which follows it in every material detail of words and punctuation (except for the final phrase in the trade agreement) must likewise be construed as a whole and, so construing it, we are unable to discern any sound reason for holding that the phrase "and valued above $5 per dozen pieces" does not apply to articles "composed wholly or in chief value of metal other than gold or platinum" in the same way that it applies to articles "set with and in chief value of precious or semiprecious stones, pearls * * *."

The judgment appealed from is *affirmed*.