BEFORE THE FIRST DIVISION, OCTOBER 6, 1955

**No. 59323.**—Harold Shamroth v. United States, protest 233727-K (New York).

OLIVER, Chief Judge:   This case relates to merchandise described on the invoice under two different items, i. e., "Ash tray no. 190" and "Keyring part for ash tray no. 190."   The collector classified the merchandise as an entirety under the provision in paragraph 1527 (c) (2) of the Tariff Act of 1930 for:

Articles valued above 20 cents per dozen pieces, *designed* to be worn on apparel or carried on or about or attached to the person, such as and including buckles, cardcases, chains, cigar cases, cigar cutters, cigar holders, cigar lighters, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, watch bracelets, and like articles * * *. [Italics supplied.]

Duty was assessed on the present merchandise at the rate of 65 per centum ad valorem under paragraph 1527 (c) (2), as modified by T. D. 51802, supplemented by T. D. 51898.

Plaintiff's principal claim is for classification of the merchandise as smokers' articles, not specially provided for, under paragraph 1552 of the Tariff Act of 1930, as modified by T. D. 51802, carrying a dutiable rate of 30 per centum ad valorem. It is alternatively claimed that the articles in question are dutiable at only 22½ per centum ad valorem under paragraph 397 of the Tariff Act of 1930, as modified by T. D. 51802, as manufactures of metal, not specially provided for.   Plaintiff

makes a further claim that the components comprising the imported commodity should be classifiable as separate entities, i. e., the ashtray as a smokers' article under paragraph 1552, as amended, *supra*, with duty at the rate of 30 per centum ad valorem, and the keyring as a manufacture of metal, not specially provided for, under paragraph 397, as amended, *supra*, dutiable at the rate of 22½ per centum ad valorem.

Plaintiff, the importer of the merchandise in question, testified that he saw the article in a factory in Italy and that he bought and sold it "for a particular purpose." In response to questioning by the court, the witness stated that the article is a novelty portable ashtray and, when asked "Where have you seen it in use and how have you seen it in use?" he replied:

Bridge games, it is primarily a card playing item; I have seen it used as a cigarette rest and an ash tray during bridge games on a table and during other card games as well.

Much of the witness' testimony is an attempt to discredit the item in question as an article having any practical value. In this connection, the witness stated that "this is what is known as a * * * conversational piece," which he explained as "something that will create conversation by being shown, usually by a woman because it is cute or something that it has or is unusual about it." Referring to the use of the article as a "conversational piece," the witness stated as follows:

* * * When I have seen it used I have seen it used by opening this and putting it on a table; I have seen it opened; I have seen it placed on the table; I have seen cigarettes put on the cigarette rest which is present for that purpose in that item and I have seen ashes disposed of in the tiny ashtray that is alongside it; that creates conversation and makes it a different piece, it is unusual.

To emphasize the uselessness of the merchandise for practical purposes, the witness testified as follows:

This is partially a key ring, partially an ash tray, but as a customary thing, as either one of them, it isn't worth anything; but as a novelty item, it will be spoken about a number of times and used a number of times. It has value as that, once having seen it in use as a conversational piece and having been shown to the person as a conversational piece, it is rarely again used as that piece; it has no practical use as a key ring over a period of time or an ash tray over a period of time. It has no use as a novelty item over a period of time, its value is limited.

A sample of the merchandise is in evidence (plaintiff's exhibit 1). It is an attractive article, composed of yellow metal and ornamented with purple suede leather. It is circular in shape, approximately 1¼ inches in diameter, three-sixteenths of 1 inch in depth, and has a cover fitted with hinge and clip. Permanently attached thereto, by means of two small links and a tiny ring, is a light piece of metal, identified herein as a keyring. Inside the article is a metal spring, on the top of which is a circular plate, decorated i nblack and red with the four suits of playing cards. The center of the circular plate has an indentation or a crease, suitable for holding a lighted cigarette. Ashes therefrom are dropped into the inverted cover that is so constructed as to be serviceable as an ashtray.

Defendant introduced the testimony of a witness engaged in the novelty and costume jewelry business. His testimony is directed entirely to a novelty item (defendant's illustrative exhibit B) that he manufactured. The article, a domestic product, serves the same general purpose as the imported article, but is in no way related to the shipment under consideration and can have no bearing on the tariff classification of the imported merchandise in question.

The provision for "Articles * * * designed to be worn on apparel or carried on or about or attached to the person" in paragraph 1527 (c), *supra*, invoked herein by the collector, has been the subject of much litigation and has been judicially construed to include articles "of utility or of adornment, or they may

possess both of these qualities," *United States* v. *Horstmann Co.*, 14 Ct. Cust. Appls. 443, T. D. 42079, and which are "incidental articles of mere personal comfort, convenience, or adornment," *Gallagher & Ascher et al.* v. *United States*, 6 Ct. Cust. Appls. 105, T. D. 35343. In this case, plaintiff contends, as stated in counsel's brief, that "the *primary, fundamental and identifying* characteristic" [italics quoted] of articles properly classifiable under the said provision is that they are carried by or attached to the person or held in the hand, *when in use.* Based upon that premise, plaintiff contends that the merchandise in question is excluded from paragraph 1527 (c), *supra*, because "any convenience that Exhibit 1 might serve as an ash tray is related to use upon a flat surface away from the person." This contention is without merit. As stated in *Coty (Inc.)* v. *United States*, 18 C. C. P. A. 33, T. D. 44003, "the test of classification under this statute was not the use of the articles but the purpose for which they were designed." In *Lionel Trading Co.* v. *United States*, 15 Ct. Cust. Appls. 365, T. D. 42562, which was cited with approval in the *Coty (Inc.)* case, *supra*, the principle was stated as follows: "The carrying itself is not made the test. It is rather that they are designed, that is, apt and suitable articles to be so carried." In each of the two cases just mentioned, the merchandise under consideration was metal lipstick holders that were assessed as articles "designed to be worn on apparel or carried on or about or attached to the person" and claimed to be classifiable as manufactures of metal, not specially provided for. In the *Coty (Inc.)* case, the appellate court expressed its factual findings as follows:

* * * This testimony is to the effect that the articles in question are imported empty, filled by the appellant with lip sticks after they are imported, and are then sold to women who use them in making their toilet at their homes, on the streets, and elsewhere. The articles are not only carried by women upon their persons, but there is some evidence that occasionally these articles are left at their homes on their dressers for use in making their toilets.

In reaching its conclusion and holding the merchandise to be properly classifiable as articles designed to be carried on or about the person, the court, in the *Coty (Inc.)* case, *supra*, stated as follows:

It must be obvious to anyone who inspects the samples, or who reads this testimony now before us, that the articles are designed to be carried upon the person. No particular object is apparent why they should be made in the form they are, with a cover for the lip-stick contents, if they were intended to be kept on the dressing table of a lady, for use there.

The same reasoning has application in this case, as developed *infra*.

"The law is well settled that the classification by the collector and his official acts are presumptively correct" (*McKesson & Robbins, Inc.* v. *United States*, 27 C. C. P. A. (Customs) 157, C. A. D. 77), and it is equally "well established that the collector is presumed to have found every fact to exist that was necessary to sustain his classification" (*E. I. du Pont de Nemours & Co.* v. *United States*, 27 C. C. P. A. (Customs) 146, C. A. D. 75). Under those principles, the presumption of correctness attaching to the collector's classification includes a finding by the classifying officer that the articles in question are *designed* to be carried on or about the person.

It is "fundamental in customs law that when the classification of the collector is challenged, the dual burden of proving that such classification is incorrect and that its own claimed classification is correct, rests upon the importer," *Yardley & Co., Ltd., et al.* v. *United States*, 41 C. C. P. A. (Customs) 85, C. A. D. 533. On the basis of the evidence introduced by the plaintiff, he has failed to sustain his burden. There is nothing herein that even tends to show that the article in question is not designed to be carried on or about the person. On the contrary, the sample, exhibit 1, *supra*, supports the collector's classification. Its com-

pactness in size and shape, its light construction, and its manner of cover fastening are definite features associated with an article designed to be carried on or about the person. Furthermore, plaintiff's testimony with respect to the use of the merchandise lends support to the collector's action. Its use "as a cigarette rest and an ash tray" during card games serves to emphasize its characteristics as an article of personal convenience, within the classes of "like articles" contemplated by the provision in paragraph 1527 (c), *supra*, under the authorities hereinabove set forth.

Plaintiff makes the further contention that the article in question is excluded from classification under paragraph 1527 (c) because it is a novelty item. The point is advanced in counsel's brief by the statement "There is authority for the proposition that a novelty item is excluded from Paragraph 1527 (a)—*Gallagher & Ascher*, T. D. 35343 (supra)." The *Gallagher & Ascher et al.* case, *supra*, does not support such a proposition. On the contrary, the so-called "pro-repel" lead pencils involved therein, and which the court recognized as "novelties," were held to be properly classifiable under the provision for articles "designed to be worn on apparel or carried on or about or attached to the person." The same conclusion was reached in the case of *Abercrombie & Fitch Co.* v. *United States*, 31 C. C. P. A. (Customs) 56, C. A. D. 248, which involved so-called "pocket warmers" that the court regarded as "novelties."

Plaintiff's alternative claim that the merchandise in question is not an entirety is wholly untenable. The article is concededly a novelty. It can be aptly called a "woman's purse accessory." Its appearance is indicative of an article designed to be carried on or about the person. In actual use, so far as the testimony herein shows, it is a combination cigarette rest and ashtray. The keyring portion is susceptible of little, if any, use in the light of plaintiff's statement that "it isn't a very good key ring, I wouldn't put any on it, because it would finally pull apart."

On the basis of the present record, plaintiff has failed to overcome the presumption of correctness attaching to the collector's classification of the present merchandise as a commercial entity under the provision in paragraph 1527 (c), *supra*, for "Articles * * * designed to be worn on apparel or carried on or about or attached to the person," with duty assessment at the rate of 65 per centum ad valorem under the said paragraph, as modified, *supra*.

For all of the reasons hereinabove set forth, the protest is overruled and the decision of the collector is affirmed. Judgment will be rendered accordingly.