(C.D. 2641)

U.S. TIME CORP. *v.* UNITED STATES

## United States Customs Court, First Division

(Decided March 29, 1966)

*Sharretts, Paley & Carter (Eugene F. Blauvelt* of counsel) for the plaintiff.
*John W. Douglas,* Assistant Attorney General (*Bernard J. Babb* and *Alfred A. Taylor, Jr.,* trial attorneys), for the defendant.

Before OLIVER, WILSON, and NICHOLS, Judges

OLIVER, Judge: The merchandise the subject of these consolidated protests was stipulated to be represented by plaintiff's collective exhibit 1 (R. 4), the three items contained therein being described on the involved invoices as bangle arms, springs, and rivets. The collector classified the merchandise for duty as parts of watch bracelets under the provisions of paragraph 1527(c)(2) of the Tariff Act of 1930, as modified by T.D. 53865 and T.D. 53877. The bangle arms were assessed at 55 per centum ad valorem as parts of said articles valued at over 20 cents per dozen, not over $5 per dozen, and the springs and rivets were assessed at the rate of ½ cent each, plus 25 per centum ad valorem, as parts valued at under 20 cents per dozen.

Plaintiff claims that the imported items are not parts of watch bracelets or any other article in paragraph 1527 and, therefore, are properly dutiable as follows: The rivets under paragraph 397, Tariff Act of 1930, as modified by T.D. 51802, at 22½ per centum ad valorem; the bangle arms and springs under paragraph 397, as modified by T.D. 51802 and T.D. 54108, at 22½, 21, 20, and 19 per centum ad valorem, depending upon the dates of importation.

The relevant tariff provisions are as follows:

Paragraph 1527(c)(2) of the Tariff Act of 1930, as modified by T.D. 53865 and T.D. 53877:

Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including, * * *, watch bracelets, * * *; all the foregoing and parts thereof, finished or unfinished_____ 55% ad val.
    Parts valued under 20 cents per dozen\_\_\_\_\_ ½¢ each and 25% ad val.

Paragraph 397 of the Tariff Act of 1930, as originally enacted:

Articles or wares not specially provided for * * * if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 45 per centum ad valorem.

Effective January 1, 1948, the General Agreement on Tariffs and Trade (T.D. 51802) reduced the 45 percent rate on certain named articles (bangle arms, springs, and rivets are not among them) and also provided a rate of 22½ percent on all other articles.

Effective June 30, 1956, T.D. 54108 further reduced the 22½ percent rate (except on certain enumerated articles among which rivets, not over 0.24 inch in diameter, are named) to 21 percent to June 30, 1957, 20 percent from June 30, 1957, to June 30, 1958, and thereafter 19 percent.

At the trial, plaintiff introduced into evidence three exhibits and the testimony of one witness. Plaintiff's collective exhibit 1, *supra*, which was an official sample of the imported items, received the following description in plaintiff's brief (p. 2) :

Consists of three separate pieces of metal, bangle arm composed of aluminum approximately 2½ inches in length, tapering in width from 5⁄16″ to 2⁄16″ and varying in thickness from 5⁄16″ to 1⁄16″. The piece is bent in an arc or curve designed to fit around a human wrist, the wider and thicker end is split so as to form a projection on either side with a hole for the rivet in each arm (R.6 and R.7) ; a small rivet, headed at one end, composed of a copper nickel alloy (nickel-silver) with a diameter of .043 (thousands) of an inch; and a small spring composed of carbon steel wire. None of the articles are plated.

Plaintiff's exhibit 2 consists of a complete wristwatch containing two each of the imported bangle arms, springs, and rivets, which have been attached to the watchcase. Plaintiff's collective illustrative exhibit 3 contains eight different articles, individually marked 3–A to 3–H, and identified by plaintiff's witness as watch bracelets (R.12).

Mr. John A. Dillon was called as a witness for the plaintiff and stated that he was a graduate engineer of the Pratt Institute and had been employed by U. S. Time Corp. for 37 years as a project engineer. His branch of the company designed the movements and cases that are used by U. S. Time in the manufacture of all kinds of watches. He testified that he was familiar with the items in plaintiff's collective exhibit 1, the same having been designed in his department. The witness also identified the complete watch assembly in plaintiff's exhibit 2, also designed in his department (R. 6) and, in substance, testified as follows concerning the function of the imported items contained therein : Each bangle arm is attached to the lug protruding from each side of the watchcase by means of the rivet which is inserted through the two holes of the bangle arm and the single hole of the lug (R. 7, 8) ; the rivet also passes through the center of the spring which is located inside the large hole in the lug of the watchcase; one end of the spring is inserted in a slot located on the bangle arm and the other end presses on a shape in the hole in the lug of the watchcase (R. 8, 9) ; the

spring gives tension to the bangle arms so that they can be spread apart and clasped around the wrist of the watch wearer, and the spring brings them back together again so as to enable them to grasp the wrist (R. 9) ; the bangle arm and spring are not fastened to each other, nor is the rivet passing through them attached to anything (R. 10) ; however, they are held in place by the operation of the rivet, headed at one end, and when inserted into the assembly, the other end is headed by a hammer blow, securing the position of each item in the assembly (R. 10).

Mr. Dillon further testified that he had helped design literally hundreds of different watches, each using different methods for holding them onto the wrist of the wearer (R. 11, 12). He identified the illustrative samples in plaintiff's collective exhibit 3 as various types of watch bracelets : Each is composed of two or more parts permanently fastened together; each could be attached to various sized watches and none was dedicated by design to a particular watch; each bracelet was obtained from U.S. Time's purchasing agent and was purchased in the condition as represented in exhibit 3 (R. 10, 13).

On cross-examination, Mr. Dillon affirmed that the imported items, individually or collectively, had no other use than that described in his direct testimony (R. 14). It was his understanding that a watch bracelet is an article used for holding a watch to the wrist (R. 15). He testified that the imported items, when assembled with the watch in plaintiff's exhibit 2, perform the function of holding said watch to the wrist of the wearer (R. 16, 17).

With respect to the articles contained in plaintiff's collective exhibit 3, the witness reiterated that they would fit many watches (R. 17) ; that some were designed for ladies' watches, one was a boy's watch bracelet and one was for a man's watch (R. 18) ; that they have two basic types of connecting fasteners, one being a ring type and the other the type that employs spring pins (R. 19, 20) ; generally, a watch designed to take a ring has a lug protruding from the case with a hole in it in which the ring is attached, while a watch designed to use the spring pins has a lug which is divided into two parts for the insertion of the pin in between them (R. 21, 22).

On redirect examination, the witness explained that a spring pin consists of a hollow tube structure in which are placed two pins, separated by a spring, and extending out from either end of the tube. Such spring pins are attached to the watchcase and not the bracelet (R. 22). He further testified that he had observed articles, such as are contained in illustrative exhibit 3, sold in retail establishments and many times without watches attached; that such bracelets can be used on items other than watches, i.e., identification plates; and

that he has seen them so used (R. 23–25). He has never seen the items contained in plaintiff's collective exhibit 1 sold either collectively or separately at retail alone, nor has he seen articles of this design manufactured by any other company (R. 25). Finally, he stated that plaintiff's collective exhibit 1 is used exclusively as illustrated by exhibit 2 and that exhibit 2 contains two bangle arms, two springs, and two rivets; if the rivets are removed, the individual items, as imported, reappear (R. 26).

On the record thus made, plaintiff argues that the imported bangle arms, springs, and rivets are not parts of a watch bracelet but are, in fact, parts of the wristwatch contained in exhibit 2. This is so, the argument continues, because by design and construction they are physically dedicated to use as an integral and necessary part of said exhibit 2. Further, they have no independent commercial entity apart from this watch and can only function when attached thereto. They are, therefore, unlike the articles in illustrative exhibit 3 which are or can be independently assembled and sold and are adaptable to various sized watches. The argument concludes that since there is no tariff provision for wristwatches and parts *per se* but only for watch movements in paragraph 367(a) (which concededly the imported items are not) and for watchcases in paragraph 367(f), which under the authority of *Concord Watch Co., Inc.* v. *United States*, 41 CCPA 13, C.A.D. 523, is limited to those parts of the case that actually enclose the movement of the watch, the merchandise can only be properly classified, as claimed, under the provisions in paragraph 397, as modified.

We agree that the imported items have no basis for classification under either provision in paragraph 367, both as written and judicially construed, *supra*. However, in *United States* v. *Astra Trading Corp.*, 44 CCPA 8, C.A.D. 627, the appellate court noted that if the merchandise were such as was contemplated within the *eo nomine* provision for watch bracelets in paragraph 1527(c)(2), then its classification under that provision would be preferred to the broader and less specific provisions of paragraph 397. In that case, the court had before it certain expansion watch bands which plaintiff claimed were outside the scope of paragraph 1527(c)(2) because, being of a cheap and unadorned construction, they functioned as necessary adjuncts for support of watches and were not, therefore, incidental articles of mere personal comfort, convenience, or adornment. After an exhaustive review of legislative and judicial history, the appellate tribunal reversed the trial court and found against the importer, holding that, by the Tariff Act of 1930, Congress had effectively severed watch bracelets, for duty purposes, from the watches which they supported, making all watch bracelets, by implication, incidental articles of mere personal comfort, convenience, or adornment.

In the *Astra Trading Corp.* case, *supra*, as well as here, the provision for watch bracelets is controlled by the common meaning of the term. The trial court in that case observed, and its observation was adopted by the appellate court, that the term "watch bracelets" has received broad application with reference to articles used to hold a watch to the wearer's wrist. The trial court had specifically noted, *Astra Trading Corp.* v. *United States*, 36 Cust. Ct. 57, C.D. 1754, at page 66:

\* \* \* Like the watches with which they are used, the bands, bracelets, or straps that hold wristwatches in place vary widely in design, purpose, materials, and value. Some are simple and functional. They hold a watch in place and do little, if anything, more. \* \* \*

Plaintiff's own trade witness readily responded that, in his opinion, a watch bracelet is an article which is used for holding a watch to the wrist (R. 15).

It is not disputed here that the imported items, when assembled together as illustrated in exhibit 2, have as their sole function the holding of the watch to the wrist of the wearer (R. 16, 17). When assembled, therefore, they form the bracelet or wrist-band section of exhibit 2, and they function in the same manner as articles within the common meaning of the tariff term "watch bracelet." In this regard the oft-cited observation of the court in *Gallagher & Ascher et al* v. *United States*, 6 Ct. Cust. Appls. 105, T.D. 35343, with respect to articles within a similarly worded provision of a previous act, is pertinent:

The controlling question in this provision, outside of the question of value and material, seems to be whether the articles in question are designed to be worn on apparel or carried on or about or attached to the person in the same manner as are the enumerated articles and like articles when in their customary use. If the assessed articles do not resemble the enumerated ones in that particular, then they would not fall within the present provision, whatever might be their resemblance to the exemplar articles or some of them in any other particular. On the other hand, if the assessed articles are similar to the prescribed exemplars in respect to the manner in which they are worn or customarily carried upon the person, then the resemblance is sufficient to satisfy the terms of the provision. \* \* \*

The mere fact that the imported items, because of their design and construction, are physically dedicated to use with but one type of watch, while the watch bracelets in exhibit 3 are usable with various sized watches, seems to be a distinction but not a difference. As already mentioned, there being no tariff designation for parts of a watch, physical dedication of the merchandise to use with a particular

watch has no bearing on the issue as to whether or not the imported items are properly described *eo nomine* as watch bracelets or parts thereof. The competing tariff provisions are paragraphs 1527(c)(2) and 397. If the imported items are bracelets or parts for but one kind of watch, they are, nevertheless, watch bracelets or parts thereof. Their particular adaptability to one watch is no bar to their separate *eo nomine* classification. *Concord Watch Co., supra.* In that case the appellate court, in holding that certain metallic stands or "feet," rings, bases, and other outer parts of the frames formed no part of watchcases as provided for in paragraph 367(f), made the following observation with respect to the separate provisions for watchcases and movements in that paragraph:

\* \* \* Although the movements may be fixed in cases *particularly adapted to contain particular movements*, the cases and the movements may not be combined and assessed with duty as entireties. \* \* \* [Emphasis added.]

Congress having severed, for duty purposes, the classification of watch bracelets and parts thereof from the watches which they support, physical dedication or particular adaptibility of one to the other will not interfere with this separate tariff treatment.

Neither do we find persuasive the fact that the imported items cannot be independently assembled in the form of watch bracelets but require the employment of the watchcase, illustrated in exhibit 2, in order that the spring may function to give the required tension to the bangle arms. Plaintiff contends they are unlike watch bracelets, such as those in collective exhibit 3, which have independent and assembled entities and are bought and sold as such. However, as we have discussed above, the fact that the watch assembly contained in exhibit 2 operates as a unit, or in tariff terminology, as an entirety, will not affect its constructive segregation for classification purposes, viz, movement, case and watch bracelet components. This is so whether they are imported as a unit or in separate sections. While other watch bracelets may be assembled independently before attachment to a watch, the method of assembly like the method of importation does not affect the fundamental question, i.e., are they articles or parts that function to hold a watch on the wrist of the wearer?

Where it is clear that a fully assembled watch with a bracelet would be constructively segregated for tariff purposes even though the movement, case, and band were by design dedicated to each other, then the fact that the bracelet portion obtained a physical and commercial identity (certainly the bracelet portion enters into the price of the entire item), only after integration with the watchcase and movement,

is immaterial. When, as here, the bracelet portion is imported in an already segregated manner by the piece, such imported pieces retain their identity as parts of that section of the ultimate assembly readily recognizable, both physically and commercially as a watch bracelet. Moreover, the manner of operation of the bracelet portion of exhibit 2 is not conceptually very different from the mode of operation of the old leather strap and buckle devices, the modern version of which is illustrated by exhibit 3–G. Exhibit 3–G consists of two separate strap sections, one end of each containing a fastening device for attachment to a watchcase by means of a standard spring pin. At the other end of one of the straps is a buckle and at the end of the other strap there is a series of holes. In normal usage, each strap is first attached independently at either end of the watchcase and then the two straps are brought around the wrist and buckled together holding the watch in place. The mode of operation of the bracelet section in exhibit 2, though unique in construction, is, nevertheless, similar. Each of two bangle arms and springs are attached to either end of the watchcase and fastened by the rivets. The arms wrap around the wearer's wrist and are held in position by the tension of the spring. Each device employs two separate arms or straps; each strap or arm is independently attached to either end of the watchcase; and each pair of arms or straps wrap around the wrist and hold the watch in place, one by means of a buckle and the other by the tension in the spring.

Of course differences exist between the watch bracelet device in exhibit 2 and those contained in exhibit 3, but these are differences of degree, not kind. It is recognized that watch bracelets, as watches themselves, can take many forms. However, it is often stated that an *eo nomine* provision, without limitation or shown contrary legislative intent, judicial decision, or administrative practice, includes all forms of the article. *Nootka Packing Co.* v. *United States*, 22 CCPA 464, T.D. 47446.

The undisputed fact is that the imported items are parts which, when assembled as in exhibit 2, form and function as watch bracelets, and, as such, are properly dutiable under the provisions of paragraph 1527(c)(2). For all of the foregoing reasons, the protests herein are deemed overruled, and judgment will be rendered accordingly.