(C. D. 1784)

M. Pressner & Co. *v.* United States

United States Customs Court, First Division

(Decided May 24, 1956)

*Siegel, Mandell & Davidson* (*Sidney Mandell* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

OLIVER, Chief Judge: This case relates to merchandise, described on the invoice as "Metal (Tin) Dime Saving Bank," which was classified under the provision in paragraph 1527 (c) of the Tariff Act of 1930 for:

Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, cardcases, chains, cigar cases, cigar cutters, cigar holders, cigar lighters, cigarette cases, cigarette holders, *coin holders*, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, watch bracelets, and like articles; * * *. [Italics added.]

The merchandise before us was assessed with duty at the rate of 65 per centum ad valorem under paragraph 1527 (c) (2), as modified by T. D. 51802, supplemented by T. D. 51898.

Plaintiff's claims are set forth in counsel's brief as follows:

It is the plaintiff's contention that these articles are properly classifiable under the provisions in Paragraph 339 of the Tariff Act of 1930, as modified, for household utensils or hollow ware, composed wholly or in chief value of copper, brass, steel, or other base metal, not plated with platinum, gold or silver, and not specially provided for, and dutiable at the appropriate rate therein. In the alternative they are properly classifiable under the provision in Paragraph 397, as modified, for manufactures of metal not specially provided for.

Plaintiff's import manager identified a sample of the imported merchandise (plaintiff's exhibit 1), which he characterized as a "dime savings bank" that is "designed to save dimes." An examination of the sample, coupled with the testimony concerning the item, shows that the article is composed of base metal which, it is conceded, is "not plated with platinum, gold, or silver, or colored with gold lacquer." (R. 2.) The bank is cylindrical, approximately 2⅜ inches in length and three-fourths of 1 inch in diameter, slightly wider than the dimes it holds. There is a slit at the top for the insertion of the coins. Indicative of its capacity to hold 50 dimes, is a graduated scale on one side, appropriately marked "1.00" to "5.00." On the other side, there is stenciled, "BE THRIFTY—SAVE A DIME DAILY." Perforations serve to show the number of dimes already inserted. Extending approximately one-half inch beyond the top, is a round-headed, slotted, metal screw. The interior contains a spring mechanism so that, after the dimes are deposited, they cannot be removed until the bank is filled. When filled, the bank is opened by turning the metal screw, which exerts pressure on the column of dimes, forcing

the bottom piece open and emptying the bank. When imported, the bank is attached to a blue card (plaintiff's exhibit 2), that includes a pictorial illustration of the bank and the wording, "BE THRIFTY—A PENNY SAVED IS A PENNY EARNED—SAVE DAILY TO OWN."

Concerning the use of the imported article, the witness stated that he has one in his own home to save dimes, that he keeps it for that purpose in the kitchen closet, and that he has also observed it used for the same purpose in the homes of friends. He stated further that he has never carried the bank in his pocket. Distinguishing between a coinholder and the savings bank under consideration, the witness testified that "A coin holder is an item that carries change for the convenience of an individual who needs change in a hurry to take it out" (R. 11), but that the item in question is "a savings bank, something entirely different." "It is designed to hold coins for the purpose of saving."

Three more witnesses testified on behalf of plaintiff. The gist of their testimony is that these savings banks are used in homes for the purpose of saving dimes and that they are not ordinarily carried on or about the person. The witness, Sanekoff, a salesman, referred to an item that he has sold for 2 years and has known in the trade as a coinholder, which, he explained, comes on "key chains for the purpose of carrying coins and keys on a key chain, about as round as a quarter and about an inch long, made with a spring action to hold coins, so when you put your hands in your pockets, the coins don't get all over your pockets so you can't find them, and it is made so you can take a coin off the top." (R. 30–31.)

In addition to the evidence, as hereinabove outlined, there was incorporated herein, on motion by defendant and without objection from plaintiff, the record in *New York Merchandise Co., Inc.* v. *United States*, 73 Treas. Dec. 896, T. D. 49593, which involved metal banks, substantially the same as those under consideration in this case. There, as here, the merchandise was classified under the provision for articles, designed to be carried on or about the person, in paragraph 1527 (c), *supra*. Plaintiff's testimony in the incorporated case was along the same line as that introduced in this case. Particular mention should be made of the reference by plaintiff's witness, Shaw, in the cited case, to a coinholder that he described as follows:

* * * It was one of those square-shaped receptacles with little cut-outs in each corner of this square-shaped object, and there was a recession for either pennies, nickels, or dimes. That was a coin holder that was carried on or about the person. When a man needed a nickel he would pull five cents out and use it for carfare. That wasn't an article of saving. It was used to segregate nickels, dimes, or quarters. (R. 6—protest 844405–G.)

Distinguishing between the coinholder that he referred to and the metal banks involved therein, the witness testified further that,

although the metal banks hold dimes, they were never considered by the trade as coinholders, but were known as dime banks. He stated that "on rare occasions" he had seen the banks carried on or about the person, but that the primary use of the articles was for savings, and that he had seen them so used "in hundreds and hundreds of homes," including his own. (R. 14—protest 844405–G.) In the incorporated case, three witnesses testified on behalf of defendant. Their testimony was directed toward a dime savings bank of domestic manufacture (illustrative exhibit A—protest 844405–G), which is substantially the same, if not identical, with the article involved in this case. In contradiction to plaintiff's testimony, defendant's witnesses stated that the item is "a pocket savings bank," that it is rarely used in the home, and that it is ordinarily carried on or about the person. Defendant's testimony, in the incorporated case, is consistent with that offered by plaintiff to the effect that the primary purpose of the imported article is for the purpose of saving dimes.

At this point, it should be noted that the actual use of merchandise is not the determining factor for classification under the provision for "Articles * * * designed to be worn on apparel or carried on or about or attached to the person" in paragraph 1527 (c) *supra*, invoked by the collector in this case. "* * * the test of classification under this statute was not the use of the articles but the purpose for which they were designed," *Coty (Inc.)* v. *United States*, 18 C. C. P. A. (Customs) 33, T. D. 44003.

The provision for "Articles * * * designed to be worn on apparel or carried on or about or attached to the person" has been the subject of much litigation in this court and in the Court of Customs and Patent Appeals. Two leading cases that construed the provision are *Gallagher & Ascher et al.* v. *United States*, 6 Ct. Cust. Appls. 105, T. D. 35343, and *United States* v. *Horstmann Co.*, 14 Ct. Cust. Appls. 443, T. D. 42079. Although those cases arose under prior tariff acts, the judicial construction applied therein has equal application under the Tariff Act of 1930, which embodies identical statutory language, so far as the issue herein is concerned. The *Gallagher & Ascher et al.* case, *supra*, arose under the Tariff Act of 1913, and involved "so called 'pro-repel' lead pencils, meaning that the lead is held by a small cylinder which slides in and out at the end of a larger cylinder or barrel." Referring to the provision for articles "designed to be worn on apparel or carried on or about or attached to the person," the court stated as follows:

* * * By that provision a duty is imposed upon articles of a certain value composed of metal, which are designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, card cases, etc. The controlling question in this provision, outside of the question of value and material, seems to be whether the articles in question are designed to be worn

on apparel or carried on or about or attached to the person in the same manner as are the enumerated articles and like articles when in their customary use. If the assessed articles do not resemble the enumerated ones in that particular, then they would not fall within the present provision, whatever might be their resemblance to the exemplar articles or some of them in any other particular. On the other hand, if the assessed articles are similar to the prescribed exemplars in respect to the manner in which they are worn or customarily carried upon the person, then the resemblance is sufficient to satisfy the terms of the provision. The rule of *ejusdem generis* is thus limited by the paragraph to the single controlling resemblance just defined.

It may be observed that the articles which are enumerated in the disputed provision are numerous and in some respects diverse. Some of them are wholly ornamental in character, for example, "vanity cases" and "millinery ornaments"; some are wholly utilitarian, for example, "cigar cutters" and "match boxes"; some may be both ornamental and useful, for example, "chains" and "cuff buttons." In one particular, however, they are all alike, and that is that in their customary use they are all carried upon the person of the user, not for warmth or protection like clothing, but rather as incidental articles of mere personal comfort, convenience, or adornment. This characteristic belongs also to the metal pencils now in question, and brings them within the provision for "like articles," which follows the list of enumerated articles in the paragraph.

The *Horstmann Co.* case, *supra*, arose under the Tariff Act of 1922. In following the judicial pronouncements made in the *Gallagher & Ascher et al.* case, the appellate court, in the *Horstmann Co.* case, stated as follows:

It will be observed by a careful review of the cases cited, that one of the fundamental requisites for classification under the provisions of paragraph 1428 in question, of articles not *eo nomine* provided for, is that such articles must be designed to be worn on apparel or carried on or about or attached to the person as *"incidental articles of mere personal comfort, convenience, or adornment."* [Italics not quoted.] Such articles may be of utility or of adornment, or they may possess both of these qualities; but, unless they are designed to be worn or carried, or attached to the person for mere personal comfort, convenience, or adornment, they can not be classified under the provisions in question.

It is true that these decisions relate to articles not enumerated in the paragraph by name. However, it was there definitely pointed out that articles not enumerated by name must, in order to be classifiable thereunder, be like those enumerated; and, in order to be like such articles, they must be "incidental articles of *mere personal comfort, convenience, or adornment."* [Italics not quoted.] If articles not provided for by name must answer to the description of "incidental articles of mere personal comfort, convenience, or adornment," in order to be like those *eo nomine* provided for, it follows that those intended to be included within the *eo nomine* provisions are of that character. Accordingly, articles not of that character were not intended to be covered by the provisions in question even though they respond generally to *eo nomine* designations therein. [All italics quoted in decision.]

The most important phase of the foregoing quotations from the *Gallagher & Ascher et al.* and the *Horstmann Co.* cases lies in their emphasis that the articles classifiable under paragraph 1527 (c) must be designed to be carried on or about the person as "incidental articles

of mere personal comfort, convenience, or adornment," (*Horstmann Co.* case) and that "the rule of *ejusdem generis* is thus limited by the paragraph to the single controlling resemblance just defined," *Gallagher & Ascher et al.* case.

With that statutory interpretation before us, we proceed toward the proper classification of the merchandise in question. The evidence in the combined records, as hereinabove outlined, is positive in showing that the article under consideration (exhibit 1, *supra*) is a metal savings bank, made to hold a certain number of dimes, and designed for the user to save or accumulate 50 dimes ($5), the amount that must be inserted before the bank can be emptied. We are equally impressed with the testimony in the combined records, with reference to the coinholders, described by plaintiff's witness in this case as "an item that carries change for the convenience of an individual" and by plaintiff's witness in the incorporated case as "square-shaped receptacles with little cut-outs in each corner" and "carried on or about the person."

In applying the provision for "Articles * * * designed to be worn on apparel or carried on or about or attached to the person," it must be borne in mind that all objects, small enough to be carried on or about the person, are not *ipso facto* classifiable thereunder within the judicial interpretation thereof in the *Gallagher & Ascher et al.* and the *Horstmann Co.* cases, *supra*. To be classifiable under paragraph 1527 (c), an article must be "such as" the enumerated exemplars (which include coinholders), "and like articles." Furthermore, and in line with the two cited cases, all articles designed to hold coins are not necessarily "coinholders * * * and like articles," within the purview of paragraph 1527 (c). Interpreting the intent of Congress, within the judicial pronouncements of the *Gallagher & Ascher et al.* and the *Horstmann Co.* cases, it is fair to say that the kind of coinholders referred to in paragraph 1527 (c) are only those that are designed to be carried on or about or attached to the person for the comfort or convenience of the user, to make readily accessible coins of one or more denomination. The dime savings bank under consideration is not within that class of merchandise. This article is a depository for dimes, useful for individuals desiring to accumulate $5, or to save that amount of money usually for a specific purpose, i. e., for "such objects as motion picture film" (R. 8), or to save "dimes to buy musical records" (R. 9). Unlike the coinholders designated as exemplars of articles classifiable under paragraph 1527 (c), this metal savings bank is not an article that responds to the characterization of an incidental article of "mere personal comfort, convenience, or adornment," as construed in the *Gallagher & Ascher et al.* and the *Horstmann Co.* cases, *supra*. The collector's classification of the merchandise is, therefore, overruled.

This conclusion does not follow the decision in the *New York Merchandise Co., Inc.*, case, *supra*, where, in sustaining the action of the collector, the court found the merchandise to be "metal coin containers 'in shape, size, or make-up' " suitable "to be carried on or about or attached to the person." In that case, the court gave no consideration to the statutory construction laid down in the *Gallagher & Ascher et al.* and the *Horstmann Co.* cases, particularly as those cases limited classification of merchandise under paragraph 1527 (c), *supra*, to "incidental articles of mere personal comfort, convenience, or adornment," the judicial interpretation that we hold to be controlling in excluding from classification under that paragraph, the dime savings bank in question.

Attention is now directed to the claims for classification, alleged by plaintiff. The claim that this savings bank is a household utensil under paragraph 339 is wholly untenable, under the decision in *Pramette Juvenille Furniture Company* v. *United States*, 36 C. C. P. A. (Customs) 61, C. A. D. 398, wherein our appellate court stated as follows:

> The words "household utensils" as used in paragraph 339, *supra*, have been consistently construed by this court to refer to articles which serve a utilitarian purpose and are chiefly used in the household for the care and maintenance of the home for the convenience and comfort of its members.

Obviously, the dime savings bank under consideration does not meet the requirements of the foregoing statutory construction. Plaintiff's claim for classification of the merchandise under the provision for "household utensils" is overruled.

In urging classification of this metal bank as hollowware under paragraph 339, counsel for plaintiff, in his brief, refers to *M. Pressner & Co.* v. *United States*, 3 Cust. Ct. 488, Abstract 42749, which also involved dime savings banks. In that case, however, neither the issue presented nor the evidence adduced was comparable with what is now before us. There, the collector classified the merchandise as manufactures of metal, not specially provided for, under paragraph 397, and the importer claimed classification as hollowware under paragraph 339. The case was submitted on a stipulation, wherein the parties agreed that the merchandise consisted of "hollow cylindrical savings banks used for containing and saving dimes," and, upon such record, the court held the articles to be classifiable as hollowware.

The decision in the said *M. Pressner & Co.* case is not to be accepted as controlling in this case. The conclusion therein is not consistent with the statutory construction of the provision for hollowware, invoked by the Court of Customs and Patent Appeals in *United States* v. *F. Weber Co., Inc.*, 25 C. C. P. A. (Customs) 159, T. D. 49266. That case involved a metal box, 8½ inches long by 3 inches wide, with inner and outer covers, the entity being a working unit for the use of

watercolors or paints. The importer sought classification of the articles as hollowware. The importer's claim was overruled, and the merchandise was held to be dutiable as a manufacture of metal, as classified by the collector. In reaching its conclusion, our appellate court held that "only such articles as are in the form, generally, of *vessels* may be classified as hollow ware." [Italics added.] The decision in the *F. Weber Co., Inc.*, case is clear in showing that the court's use of the term "vessels," in construing the provision for hollowware, was based on the following definition from Funk & Wagnalls Standard Dictionary (1925):

Vessel, *n.* 1. A hollow receptacle of any form or material, but especially one capable of holding a liquid, as a pitcher, bottle, vase, kettle, or cup.

The statutory construction invoked in the *F. Weber Co., Inc.*, case, *supra*, followed the appellate court's earlier decision in *United States* v. *Ellis Silver Co.*, 16 Ct. Cust. Appls. 570, T. D. 43297, wherein the court stated as follows:

The term "hollow ware" is defined by the lexicographers as follows:

h.–ware, n. 1. Manufactured articles having a hollow interior; especially, cast-iron kitchen utensils, as pots and kettles.—Funk & Wagnalls New Standard Dictionary (1925).

Hollow-ware. Bowl- or tube-shaped ware of earthenware, wood, or metal: now especially the last.—The Oxford Dictionary (1901).

h. ware, china, silverware, etc., in the form of hollow vessels, as distinguished from flatware.—Webster's New International Dictionary (1925).

From the quoted dictionary definitions it appears that the term "hollow ware" covers articles and wares composed of china, silver, base metals, and other materials. However, in our opinion, the common meaning of the term does not include all articles having hollow interiors, but only such as are in the form of vessels.

In the light of the last two cited authorities, the dime savings bank in question is not an item of hollowware, within the provision for such merchandise in paragraph 339. What was stated in the *F. Weber Co., Inc.*, case, *supra*, is repeated here with approval:

It would require a wide stretch of the imagination to regard the involved articles as vessels, within the common meaning of that word, and we do not think that Congress ever contemplated that the term "hollow ware," as used in paragraph 339, should be construed so broadly as to embrace such articles as are here involved.

Plaintiff's claim for classification of the dime savings bank in question as hollowware is overruled.

Since the savings bank in question is concededly composed of base metal and not plated with platinum, gold, or silver, or colored with gold lacquer, it is properly classifiable under the residuary provision in paragraph 397 of the Tariff Act of 1930, as modified by T. D. 51802, for "Articles or wares not specially provided for, whether partly or wholly manufactured: * * * Composed wholly or in chief value

of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer," and dutiable thereunder at the rate of 22½ per centum ad valorem, as alleged by plaintiff, through valid amendment to its protest.

The protest is sustained and judgment will be rendered accordingly.