(C.D. 3001)

Frank P. Dow & Co., Inc.
Television & Radio Supply Co. } *v.* United States

United States Customs Court, First Division

(Decided May 11, 1967)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiffs.
*Barefoot Sanders*, Assistant Attorney General (*Glenn E. Harris* and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before Oliver, Watson, and Rao, Judges

WATSON, Judge: The merchandise involved in this protest consists of fans described on the invoice as "Hatsune Baby Fan without battery" and "Zefyr Fan, without battery." They contain plastic hinged blades which bend up and revolve when powered by the electric motor contained in the fan.

The fans in question were classified for duty at the rate of 55 per centum ad valorem under paragraph 1527(c)(2) of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865, supplemented by T.D. 53877, as articles designed to be carried on or about the person. Plaintiffs, maintaining that these fans were not designed to be carried on or about the person, claim that they are more specifically provided for and properly dutiable either at 19 per centum ad valorem under the *eo nomine* provision for fans of all kinds under paragraph 1521 of the said act, as modified by Presidential proclamation of certain agreements supplementary to the General Agreement on Tariffs and Trade, T.D. 55816, or under paragraph 353 of the act, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, at the rate of 17½ per centum under the provision therein for "* * * articles having as an essential feature an electrical element or device, such as * * *, fans."

The statutes of the Tariff Act of 1930, here under consideration, are as follows:

Paragraph 1527(c)(2), as modified by T.D. 53865 and T.D. 53877:

Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, card cases, chains, cigar cases, cigar cutters, cigar holders, cigar lighters, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, watch bracelets, and like articles; all the foregoing and parts thereof, finished or unfinished, composed wholly or in chief value of metal other than gold or platinum (whether or not enameled, washed, covered, or plated, including rolled gold plate), or (if not composed in chief value of metal and if not dutiable under clause (1) of paragraph 1527(c), Tariff Act of 1930) set with and in chief value of precious or semiprecious stones, pearls, cameos, coral, amber, imitation precious or semiprecious stones, or imitation pearls:

Articles and parts (not including parts valued under 20 cents per dozen) valued not over $5 per dozen pieces or parts (except buckles, cigar and cigarette lighters and parts thereof, collar, cuff, and dress buttons, ladies' hand-

bags set with and in chief value of rhinestones,
and mesh bags and parts thereof) _____ 55% ad val.

Paragraph 1521, as modified by T.D. 55816:

Fans of all kinds, except common palm-leaf fans_____ 19% ad val.

Paragraph 353, as modified by T.D. 51802:

Articles suitable for producing, rectifying, modifying,
controlling, or distributing electrical energy, and
articles having as an essential feature an electrical
element or device, such as electric motors, fans, loco-
motives, portable tools, furnaces, heaters, ovens,
ranges, washing machines, refrigerators, and signs;
all the foregoing (not including electrical wiring
apparatus, instruments, and devices) finished or un-
finished, wholly or in chief value of metal, and not
specially provided for:

    Switches and switchgear which are not wiring
      apparatus, instruments, or devices; fans;
      blowers; and washing machines_____ 17½% ad val.

The record in this case consists of the testimony of one witness called
by the plaintiffs and that of one witness called by the defendant, to-
gether with two exhibits received in evidence.

Plaintiffs' exhibit 1 is a sample of the imported merchandise, con-
sisting of a fan and carrying case and, in addition, a battery to power
the fan. It appears that the battery contained in the fan is imported
separately and installed after importation. (R. 9–10.) Plaintiffs'
exhibit 2 consists of advertising literature and a paper cut holder
(R. 14). Reference to such exhibits will be hereinafter made as is
deemed necessary in the determination of the proper classification of
the involved merchandise.

Mr. Harry Arnsberg, a wholesale distributor since 1925 of elec-
tronic supplies such as television parts, radios, tape recorders, and
similar merchandise, testified on behalf of the plaintiffs. He stated
that he was familiar with the merchandise described on the relevant
invoices and that it was the same as the samples introduced in the case
at bar. He did not handle in his business the sale of any jewelry,
cigarette items, or buttons. (R. 9–10.) The witness testified that he
had seen these fans used for the purpose of cooling oneself by being
placed in a wooden holder on a desk, or held in the hand. He had used
them himself on his desk. (R. 11.) Mr. Arnsberg stated that he had
used plaintiffs' collective exhibit 2 in the sale of the involved items.
The catalog sheet in said exhibit is distributed to dealers, gift shops,
fund raising organizations, and wholesale distributors. The black
circular sheet in plaintiffs' exhibit 2 is sent with orders of fans and for
use as a holder by the ultimate consumer. These materials were pre-

pared by the witness' distributor in Bakersfield, Calif., under his supervision. (R. 13–14.)

Mr. Arnsberg further testified that he has personally demonstrated the fan in connection with sales at his own place of business and on sales calls in Olympia, Tacoma, and Seattle, Wash., and has seen the fan used in homes, on bridge tables "where it has been picked up and used." (R. 15–16.) The purpose of the case which comes with the fan, described as a carrying case, is to protect the blades of the fan from being broken when they are folded in. (R. 16.) Plaintiffs' witness then testified that the only place he had seen the fans carried was in a brief case, by himself or by salesmen. Further uses, the witness had observed, were by mature women for their personal comfort, use on a desk for cooling purposes, and, on one occasion, to dry fingernails. (R. 17.) He had also seen the fan used in automobiles where, he stated, it was kept in the glove compartment. In the opinion of the witness, the fan is too bulky to be carried about the person. (R. 19.) He further stated that bases for these fans have been made by a certain manufacturer and that his company has sold some of these stands with the fans, but has sold or given away more of the cardboard stands. (Plaintiffs' exhibit 2.)

On cross-examination, Mr. Arnsberg agreed that plaintiffs' exhibit 1 can be inserted in a man's pocket of ordinary size but that "it bulges out the side." (R. 20.) After inserting the article in the breast pocket of his coat and in his trouser pocket, he stated that the article was "too heavy to carry on the person." (R. 20.) The witness agreed, however, that the fan could easily be carried in an ordinary lady's handbag, one measuring about 8 inches in length and 6 inches in height or width. (R. 21.) He then stated that plaintiffs' exhibit 1 with the battery weighs approximately 4 ounces. (R. 22.) The record further discloses that plaintiffs' exhibit 1 is primarily sold to dealers, jobbers, or mail-order customers but that resales by these buyers are not supervised by his company and that the use of these fans would be observed only if someone from the witness' company happened to be present when the sales were made. The use of plaintiffs' exhibit 1 has been determined by plaintiffs' witness by ordinary observation, rather than by a deliberate, "conscious" survey. (R. 23.)

Mr. Arnsberg further testified that he had seen the fan used several hundred times and that, between 1961 and 1962, he had sold some 75,000 pieces. The witness agreed with the language on the paper stand (plaintiffs' exhibit 2) which says, "ladies personal comfort fan" and stated that the fan could be used in crowded theaters and that in such instances "it would be carried there," and further stated that he had heard of a number of different uses for the fan, including drying hosiery, "icing on occasions," and that the item could be adapted to many uses. (R. 24–25.) The record further discloses that the fans had

been demonstrated at the Seattle Exposition in 1962. When asked whether the "obvious" use of these fans at the Exposition was to be carried on the person during hot days, Mr. Arnsberg testified that he did not know for what purpose they were sold, only stating in this connection that they were sold for "gift purposes." (R. 26–28.) The witness then testified that he had seen the item used in a crowded room to cool the user and had also seen it used at a meeting where it was taken out of a brief case and held in the hand. (R. 28–29.) On redirect examination, plaintiffs' witness stated that, in the instance in which he had carried the fan in his pocket, such carrying "was discomforting." (R. 30.) He further testified that the fan would not fit easily into the smaller type of ladies evening bags, if the person were carrying something else in the bag. Plaintiffs' witness concluded his testimony on the use of the fan in question by stating that the fan, as indicated by the language on plaintiffs' collective exhibit 2, could be used for infant care, by being held over a crib or sulky, "or either place where a baby is resting." (R. 31.)

Defendant called as its witness Mr. Lawrence Antonelli, liquidator for the collector of customs at Portland, Oreg. He testified that he had seen an item similar to plaintiffs' exhibit 1 used specifically on one occasion at a meeting at which time he stated he had noticed a woman pull one of these baby fans out of her purse and use it to keep cool. He testified that after using the fan, the woman had returned it to her purse. (R. 33–34.)

The provisions of paragraph 1527(c)(2), as modified, *supra*, here in question have been the subject of considerable litigation arising under the Tariff Act of 1930, as well as under prior tariff acts. Our appellate court in two leading cases, namely, *Gallagher & Ascher et al.* v. *United States*, 6 Ct. Cust. Appls. 105, T.D. 35343 (involving the construction of paragraph 356 of the Tariff Act of 1913) and *United States* v. *Horstmann Co.*, 14 Ct. Cust. Appls. 443, T.D. 42079 (involving predecessor paragraph 1428 of the Tariff Act of 1922), has passed upon provisions such as are here before us for consideration.

In the *Gallagher & Ascher et al.* case, *supra*, the merchandise under consideration was described by the court as "so-called 'pro-repel' lead pencils, meaning that the lead is held by a small cylinder which slides in and out at the end of a larger cylinder or barrel." The pencils were composed entirely of base metal, except that some of them had imitation precious stones set in their top ends. Referring to the provisions for articles "designed to be worn on apparel or carried on or about or attached to the person," the court stated as follows:

* * * By that provision a duty is imposed upon articles of a certain value composed of metal, which are designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, card cases, etc. The controlling question in this provision, outside of the question of value and material, seems to be whether the

articles in question are *designed* to be worn on apparel or carried on or about or attached to the person in the same manner as are the enumerated articles and like articles when in their customory use. If the assessed articles do not resemble the enumerated ones in that particular, then they would not fall within the present provision, whatever might be their resemblance to the exemplar articles or some of them in any other particular. On the other hand, if the assessed articles are similar to the prescribed exemplars in respect to the manner in which they are worn or customarily carried upon the person, then the resemblance is sufficient to satisfy the terms of the provision. The rule of *ejusdem generis* is thus limited by the paragraph to the single controlling resemblance just defined.

It may be observed that the articles which are enumerated in the disputed provision are numerous and in some respects diverse. Some of them are wholly ornamental in character, for example, "vanity cases" and "millinery ornaments"; some are wholly utilitarian, for example, "cigar cutters" and "match boxes"; some may be both ornamental and useful, for example, "chains" and "cuff buttons." In one particular, however, they are all alike, and that is that in their customary use they are all carried upon the person of the user, not for warmth or protection, like clothing, but rather as incidental articles of mere personal comfort, convenience, or adornment. This characteristic belongs also to the metal pencils now in question, and brings them within the provision for "like articles," which follows the list of enumerated articles in the paragraph.

In the *Horstmann Co.* case, *supra*, the appellate court referred to several earlier cases, including the *Gallagher & Ascher et al.* case, and then stated as follows:

It will be observed by a careful review of the cases cited, that one of the fundamental requisites for classification under the provisions of paragraph 1428 in question, of articles not *eo nomine* provided for, is that such articles must be designed to be worn on apparel or carried on or about or attached to the person as "*incidental* articles of *mere personal comfort, convenience, or adornment.*" (Italics not quoted.) Such articles may be of utility or of adornment, or they may possess both of these qualities; but, unless they are designed to be worn or carried, or attached to the person for mere personal comfort, convenience, or adornment, they can not be classified under the provisions in question.

The statutory construction laid down in the *Gallagher & Ascher et al.* and *Horstmann Co.* cases, *supra*, was affirmed by our appellate court in *United States* v. *Astra Trading Corp.*, 44 CCPA 8, C.A.D. 627, wherein the provisions of paragraph 1527(c)(2) of the Tariff Act of 1930, as modified, were likewise under consideration.

In *United States* v. *Kress & Co.*, 13 Ct. Cust. Appls. 66, T.D. 40885, certain key rings attached to snap hooks to which are fastened leather loops through which belts may be passed, although known to be carried

on the person, were held not dutiable under predecessor paragraph 1428 of the Tariff Act of 1922. In so holding, the court, page 68, stated:

\* \* \* To come within the purview of the provision under which the goods were assessed an article *must be designed* to be worn on the apparel or to be carried on or about or attached to the person. If in shape, size or make-up an article is unsuitable to be carried on or about or attached to the person, it is not within the meaning of the provision although designated therein by name \* \* \*. [Italics quoted.]

No article in chief value of metal, even if it be suitable to be carried on or about or attached to the person, is subject to the provisions upon which the Government relies if it is designed to be used and is made for use when not so carried. \* \* \*

To the same effect, see *Lionel Trading Co.* v. *United States*, 15 Ct. Cust. Appls. 365, T.D. 42562.

It thus appears, as indicated by the cases above cited herein, that, in order for an article to come within the provisions of paragraph 1527 (c) (2) of the Tariff Act of 1930, as modified, such articles must be *designed* to be worn on apparel or carried on or about or attached to the person as incidental articles of mere personal comfort, convenience, or adornment. Accordingly, the first question presented here for determination is whether the imported merchandise is designed to be carried on or about the person for personal comfort, convenience, or adornment.

Plaintiffs, in the case at bar, have the burden, in the first instance, of overcoming the presumption of correctness attaching to the classification of the collector that these so-called "Baby-Fans" or "Zefyr Fans" are articles of personal adornment, comfort, or convenience designed to be carried on or about the person. In our opinion, the testimony in this case and the exhibits received in evidence support a finding that the involved merchandise is properly dutiable as classified, and for the reasons stated below.

At the outset, we deem it pertinent to observe that the article herein involved was imported with a plastic case. Plaintiffs' witness testified that the case protects the blades when they are folded in and the little switch that operates the fan and that the blades are folded down and inserted into the case "because if it is to be *carried* loose, the blades are apt to be broken." [Italics ours.] His further testimony with respect to the blades that, if they were left up and put in any object, they could catch on, indicates the necessity and use of the plastic case when the article is carried on the person. The testimony of Mr. Arnsberg to the effect that he had seen these articles used and had used them himself on his desk, using a wooden holder (R. 11), indicates, in our opinion, that the use of the article with a "stand" was an exceptional one, since, except for extraordinary circumstances, the

chances of the blades being broken would be remote, if, for instance, the article in question were left on a table or desk, and no case would be employed in such a situation. The auxiliary use of a stand or holder in some alleged instances, does not negate, in our opinion, a finding that the imported fans are *designed* to be carried on or about the person, since the character of the imported item is clearly that of an article carried on or about the person for possible employment with the use of a stand or holder, the record not showing that the article is permanently affixed to a holder. We are persuaded, from the factors here mentioned, that the articles at bar were "designed" to be carried on or about the person.

While plaintiffs' witness was of the opinion that exhibit 1 is "inconvenient," bulky, and too heavy to carry about the person, stating that he had tried to carry it but that it was not practical to do so, he agreed that the article can be easily carried in a lady's ordinary handbag (R. 21) and that he had seen it in one instance taken from a brief case and then held in the hand while being used. (R. 29.) An examination of plaintiffs' exhibit 1 discloses that it is small in size. This, together with the fact that it has folding blades is a definite indication, in our opinion, that the article was designed to be carried in a case or pocket or handbag or in some similar article such as a brief case. The fact that the article is carried in a lady's handbag or other vehicle does not prevent its classification under the provisions of paragraph 1527 (c) (2) here in issue. In *Levy Corporation et al.* v. *United States*, 12 Ct. Cust. Appls. 181, T.D. 40168, the court, in holding certain puff boxes, lipsticks, and similar personal items properly classifiable under predecessor paragraph 356 of the Tariff Act of 1913, at page 185, stated:

The importers urge that paragraph 356 was only intended to cover articles of this kind, which in the condition as imported were designed and so fitted as to be capable of being directly worn on apparel or carried in the pockets of clothing * * *.

* * * *The real fact is that all these articles, as we have already pointed out, are designed to be carried on or about the person and it matters not whether such carrying is in a pocket, bag, box, or some other receptacle used in lieu of a pocket.* [Emphasis supplied.]

Plaintiffs' collective exhibit 2 in this case also confirms our conclusion that the articles under consideration were designed to be carried on or about the person. On the black and white part of said exhibit is a drawing of the imported article with the blades closed, "With Handy Carrying Case." The blue paper part of said exhibit discloses a picture of the imported article with the blades partly open, also depicted "With Handy Carrying Case." In addition, the overall language employed in said exhibit further indicates that the article

is designed for the personal comfort of the user, in circumstances where more elaborate equipment is not available or is impractical for use.

Plaintiffs contend alternatively that the fans here involved are more specifically provided for as "articles having as an essential feature an electrical element or device, such as * * * fans" under paragraph 353 of the Tariff Act of 1930. In the latest expression by this court relative to the scope of the provisions of paragraph 353 of the Tariff Act of 1930 as opposed to those of paragraph 1527(c) (2), it was pointed out that paragraph 353 relates not to the entire design of an article but merely to one essential feature thereof, whereas articles coming within the scope of paragraph 1527(c) (2) are limited not only by value and material considerations but also under established interpretations laid down by the courts, they must be designed to be carried on or about the person, in their customary usage, as incidental items of mere comfort, convenience, or adornment. See, *M. Zwiebel v. United States*, 58 Cust. Ct. 103, C.D. 2898 (protest 59/24514). In this connection, the holding of the court in the case of *Fred Roberts Co.* v. *United States*, 46 Cust. Ct. 254, C.D. 2265, appears pertinent with respect to the application of paragraph 353 of the tariff act to the imported merchandise.

In the *Roberts Co.* case, *supra*, the court, at page 257, stated:

We may say that our research of the adjudicated cases relating to the provisions of paragraph 353 does not indicate that it has ever been held that any given article would necessarily be excluded from other provisions of the tariff act which would embrace it on the sole ground that it had, as an essential feature, an electrical element or device. In other words, paragraph 353, *supra*, does not, as to any merchandise which is within its description, invade and supersede all other tariff enumerations or designations which might also be applicable to such merchandise. The language in which the provision is framed is not so sweeping, clear, and definite as to indicate that any or all imported articles having as an essential feature an electrical element or device must be classified thereunder to the exclusion of all other tariff enumerations which may be applicable to them. *Kayser & Co. (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 474, T.D. 41367.

This view is supported by numerous decisions of this and our appellate court involving questions of the relative specificity of the provision in paragraph 353, *supra*, here in question when in competition with other tariff designations. * * *

In the above connection, it is noted that paragraph 353 of the tariff act contains a "not specially provided for" clause, whereas paragraph 1527(c) (2) does not contain these words. It is well established that the use of the words "not specially provided for" in a tariff paragraph indicates that an all-inclusive provision was not intended. *International Clearing House of New York, Inc.* v. *United States*, 1 Cust. Ct.

124, C.D. 34. As indicated by the court in the *Fred Roberts Co.* case, *supra*, the provision in paragraph 353, as modified, *supra*, for articles having as an essential feature an electrical element or device, does not invade or supersede other tariff designations which might also be applicable to imported merchandise. Paragraph 353 of the tariff act embraces only those articles not specially provided for elsewhere. The imported merchandise, as heretofore established, was designed to be carried on or about the person and is specially provided for in paragraph 1527 (c) (2), as modified, *supra*.

Accordingly, we are of the opinion and hold that paragraph 1527 (c) (2) of the Tariff Act of 1930 is a more specific provision than paragraph 353 of the said act for the importation here involved. The plaintiffs' claim that the merchandise at bar is properly classifiable under paragraph 353 of the tariff act, as modified, is without merit.

Plaintiffs in this case contend that, even if the court should find that these fans are articles designed to be carried on the person, they are more specifically provided for under the *eo nomine* provision in paragraph 1521 of the tariff act, as modified, *supra*, for "fans of all kinds, except common palm-leaf fans." In this connection, plaintiffs direct our attention to the holding of the court in *Kresge Co. et al.* v. *United States*, 11 Ct. Cust. Appls. 396, T.D. 39318; *United States* v. *Joseph G. Brenner Co.*, 19 Ct. Cust. Appls. 105, T.D. 45243; and *United States* v. *Sheldon & Co.*, 14 Ct. Cust. Appls. 175, T.D. 41697.

In the *Kresge Co.* case, *supra*, certain folding metal scissors, valued above 20 cents per dozen pieces, were classified under paragraph 356 of the Tariff Act of 1913 for articles "designed to be worn on apparel or carried on or about or attached to the person." They were claimed properly dutiable under the *eo nomine* provision in paragraph 128 of said act as "scissors." The court therein (citing *inter alia United States* v. *European Watch & Clock Co.*, 11 Ct. Cust. Appls. 363, T.D. 39160), at page 400, stated:

We think the principle of the last-cited decision is well applicable here. Paragraph 161 there under consideration *eo nomine* applied to watch movements and watchcases just as paragraph 128 applies to scissors and blades for the same. There it was held that the watch movements and cases, although designed, as were the wrist watches, to be carried on or about the person, and so in that particular within paragraph 356, were, nevertheless, still to be classified under paragraph 161, and so here these scissors are classifiable under the paragraph in which they are *eo nomine* referred to.

In the *Brenner* case, *supra*, the court, page 107, stated:

* * * we are of the opinion that the *eo nomine* designation of belt buckles in paragraph 346 is more specific than the provision in paragraph 1428 providing for articles to be worn on apparel or carried

on or about or attached to the person, "* * * such as and including buckles."

The merchandise, in the case at bar, is not, in our opinion, within the *eo nomine* statutory provision in paragraph 1521 of the tariff act for "Fans of all kinds." Accordingly, the case at bar is distinguishable from the *Kresge Co.* and *Joseph G. Brenner Co.* cases above cited.

In *United States* v. *Sheldon & Co.*, 14 Ct. Cust. Appls. 175, T.D. 41697, the merchandise involved consisted of certain mechanical hand fans for fanning the face, operated by a spring actuated by repeatedly pressing a push button, was held properly classifiable under predecessor paragraph 1422 of the Tariff Act of 1922, for "Fans of all kinds, except common palm-leaf fans," rather than as in chief value of celluloid under paragraph 31 or in chief value of metal under paragraph 399 of said act. In so holding, the court, page 176, stated:

We are of the opinion that a device held in the hand and operated by hand, if made and used to agitate the air for the purpose of cooling the face is a fan regardless of whether it has a curved or a flat surface and regardless of whether it is put in operation by a movement of the hand or by a mechanism held in the hand and operated by the hand. We are satisfied that articles of the kind imported are bought and sold as fans, that they are known and designated by people in general as fans, and that as they are hand devices, operated by hand, and made for the purpose of agitating the air and cooling the face they are provided for in paragraph 1422.

The master rule in the construction of statutes is to so interpret them as to carry out the legislative intent. *United States* v. *Clay Adams, Inc.*, 20 CCPA 285, T.D. 46078. In determining whether the involved articles are properly classifiable under the provision of paragraph 1521, *supra*, recourse to the tariff history of the provision (paragraph 1521) "Fans of all kinds * * *" appears pertinent.

The Summary of Tariff Information, 1929, at page 1993, sets forth the language of paragraph 1422 of the Tariff Act of 1922, to wit "Fans of all kinds, except common palm-leaf fans, 50 per centum ad valorem" and then gives the following information:

## FANS

Description and uses.—The varieties of fans may be classified as (1) those which can be folded or closed and (2) those permanently expanded or fixed. The former are sometimes made of thin slips of ivory or wood but more commonly of a continuous surface of paper, silk, or other fabrics mounted on strips of rigid material, pivoted at one end, and folding together easily in the manner of plaiting. Fixed fans are made of feathers set side by side, of leaves of palmate-leafed palm trees or of paper or similar films spread on slender radiating sticks. Common palm leaves, plain and not ornamented or decorated, are provided for in paragraph 1572.

Information to the same effect was given in the Tariff Information Surveys on the articles in paragraphs 349 and 350 of the Tariff Act of 1913, N–11, and in The Summary of Tariff Information, 1921, page 1137, relative to predecessor paragraphs of the tariff acts for "Fans of all kinds."

In the Summaries of Tariff Information, 1948, volume 15, part 3, at page 28:

### Fans, Except Common Palm-Leaf Fans

#### (PAR. 1521)

#### Comment

This summary covers hand (*non-mechanized*) fans of all kinds except common palm-leaf fans. Fans of the type here under consideration may be classified as collapsible or fixed. Collapsible fans may be made only of thin slips of ivory or wood, but more commonly they consist of paper, silk, or other fabrics, mounted on strips of rigid material, pivoted at one end so that they may be easily folded. Fixed fans may be made of cardboard, feathers, or cleft leaves, or of paper or similar material spread on slender radiating sticks.

United States production of fans covered in this summary consists largely of those made of cardboard, by machine, and bearing printed advertisements of customers for whom they are made. Most of the fans produced domestically therefore are not comparable nor competitive with imported fans. Statistics of production and exports are not available; exports are probably neglgiïble [sic].

Fans are usually sold in late spring or summer; their use has diminished considerably *since the introduction of electric fans* and air conditioning. [Emphasis supplied.]

The legislative history of the relevant paragraphs covering "Fans of all kinds," indicates, in our opinion, that the articles here involved are not the type of fans covered by and, accordingly, are not embraced within the provisions of paragraph 1521 of the tariff act. It would appear that paragraph 1521 under consideration covers hand (non-mechanized) fans of all kinds except common palm-leaf fans. (Summaries of Tariff Information, 1948, *supra*). We note in passing that the *Sheldon & Co.* case, *supra*, held the "mechanical" hand fans there involved properly dutiable under predecessor paragraph 1422 for "Fans of all kinds." However, we are not persuaded that articles of the type here involved are classifiable under paragraph 1521 here in question. The information conveyed in the legislative summaries above referred to, shows, in our opinion, that it was the intent of Congress not to include within paragraph 1521 of the tariff act such fans as are here involved, which are battery operated. Further, the specific inclusion by Congress of the provision in paragraph 353 of the tariff act, as modified, for "articles having as an essential feature an

electrical element or device, such as * * * fans, * * *" is inconsistent, in our opinion, with ascribing to paragraph 1521, *supra*, an intent on the part of Congress to embrace within the latter paragraph fans of any types other than the nonmechanical or nonelectrical fans of the character described in the legislative proceedings relating to the enactment of said paragraph 1521 of the Tariff Act of 1930 and predecessor provisions in prior tariff acts.

For all of the reasons stated aforesaid, we are of opinion and hold that the articles here involved are properly dutiable under paragraph 1527(c)(2) of the Tariff Act of 1930, as modified, at the rate of 55 per centum ad valorem as articles designed to be carried on or about the person, as classified. The protest is overruled. Judgment will issue accordingly.